**T.J. KING, Plaintiff–Appellee,**

v.

**EMPLOYERS NATIONAL INS. CO.,**
Intervenor–Appellant,

v.

**MANITOWOC, INC., et al., Defendants.**

**A.C. GAYDEN, Sr., Plaintiff–Appellee,**
Cross–Appellant,

v.

**MANITOWOC, INC.,**
Defendant–Appellee–Appellant.

**ESSEX CRANE RENTAL CORP.,** Defendant–Third Party Plaintiff–Appellant, Cross–Appellee, Appellee,

v.

**INTERSTATE FIRE & CASUALTY CO., Third Party** Defendant–Appellee–Appellant,

v.

**EMPLOYERS CASUALTY INS. CO.,** Third Party Defendant–Appellee, Cross–Appellant.

**STONEWALL SURPLUS LINES INS. CO., Third Party Defendant–Appellee,** Cross–Appellant,

v.

**EMPLOYERS NATIONAL INS. CO., and JALCO, Inc., of Texas, Intervenors–Appellants, Appellees and Cross–Appellees.**

**T.J. KING, Plaintiff–Appellee,**

v.

**MANITOWOC, INC., Defendant.**
and

**ESSEX CRANE RENTAL CORP.,** Defendant–Third Party Plaintiff–Appellee,

v.

**INTERSTATE FIRE & CASUALTY CO., Third Party** Defendant–Appellee–Appellant,

v.

**EMPLOYERS CASUALTY INS. CO., and Stonewall Surplus Lines Ins. Co., Third Party Defendants–Appellees,**

v.

**EMPLOYERS NATIONAL INS. CO.,
and JALCO, Inc., of Texas,
Intervenors–Appellants.**

Nos. 89–3701, 90–3097.

United States Court of Appeals,
Fifth Circuit.

April 23, 1991.

Opinion on Denial of Petition
for Rehearing June 18, 1991.

Esmond Phelps, II, H. Alston Johnson, III, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for intervenor-appellant.

Wayne T. Crochet, Robert T. Garrity, Jr., Harahan, La., for plaintiff-appellee.

Daniel J. Caruso, Kenneth R. Bowen, Simon Peragine, Smith & Redfearn, New Orleans, La., for Essex Crane.

Esmond Phelps, II, Dorothy H. Wimberly, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for Employers Nat. & Jalco.

Charles W. Schmidt, III, Daniel A. Rees, Christovich & Kearney, New Orleans, La., for Interstate Fire.

Robert B. Deane, John N. Critchlow, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Stonewall.

Michael D. Carbo, Karen L. Lewis, New Orleans, La., for Manitowoc.

Jesse R. Adams, Jr., Thomas S. Morse, Adams & Johnston, New Orleans, La., for Employers Cas. Inc.

Mark W. Smith, Gregory F. Gambel, New Orleans, La., for A.C. Gayden.

Wayne T. Crochet, Robert T. Garrity, Jr., Harahan, La., for T.J. King.

Before CLARK, Chief Judge, GARZA and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Two employees, T.J. King and A.C. Gayden, were severely injured in an on-the-job crane accident. The employees filed their tort actions against the crane rental company and the crane manufacturer, which claims were settled before the trial was concluded. This appeal raises two principal issues: (1) whether the district court correctly required the compensation carrier to pay a large portion of the attorney's fees the employees incurred in prosecuting their

tort actions, and (2) whether the district court correctly resolved several insurance coverage issues. We affirm in part, reverse in part, and remand.

## I.

In 1986, JALCO Inc. of Texas (JALCO) contracted with Jefferson Parish to construct and install a sewer force main. To complete this project, JALCO leased a crane manufactured by Manitowoc, Inc. (Manitowoc) from Essex Crane Rental Corporation (Essex). In July 1987, the crane's gantry collapsed, pinning JALCO employee King and nearly severing his arm. Attempting to rescue King, fellow employee Gayden was thrown forty feet into the air when wires attached to the gantry were released. Gayden received severe head injuries, brain damage, and was permanently disabled.

Both King and Gayden[1] sued Essex and Manitowoc. JALCO and its workers' compensation insurer, Employers National Insurance Company (collectively ENIC), intervened in the suits seeking reimbursement for compensation and medical benefits already paid to King and Gayden. Essex also contended that it was an additional insured under JALCO's liability insurance policies. To enforce its rights, Essex filed third-party complaints against JALCO's liability insurance carriers: Employers Casualty Company (Employers Casualty); Interstate Fire and Casualty Company (Interstate); and Stonewall Surplus Lines Insurance Company (Stonewall).

Before trial, Gayden settled with Essex, Employers Casualty, Interstate, and Stonewall. In the settlement agreement, Interstate and Stonewall agreed to pay ENIC its full compensation lien, and all parties waived any claims against ENIC regarding the lien. Stonewall and Interstate further reserved the right to dispute coverage of Essex and to seek reimbursement from Essex for their contribution to the settlement. On the morning of trial, Gayden settled with Manitowoc. Gayden agreed to indemnify Manitowoc against any claims by

ENIC for reimbursement. King dismissed his claim against Manitowoc. At the end of the first day of trial, King settled with Essex and Employers Casualty. From King's proceeds of this settlement, King was to pay ENIC its compensation lien. The parties dispute whether ENIC approved any of these settlements.

After settling with the tort defendants, Gayden and King moved to assess and apportion recovery costs, comprised of attorney's fees and other litigation costs. The plaintiffs alleged that ENIC owed them a proportionate share of the costs of recovery. In September 1989, the district court awarded King attorney's fees of $60,590.24 deducted from ENIC's compensation lien of $60,988.26. In January 1990, the district court awarded Gayden attorney's fees of $189,602.58, an amount equal to ENIC's compensation lien. These awards left ENIC with a net recovery of $398.02 for benefits paid to King and a net recovery of zero for benefits paid to Gayden. Also in January 1990, the district court ordered Manitowoc, Employers Casualty, and Essex to pay ENIC judicial interest on the Gayden lien and Essex to pay ENIC judicial interest on the King lien. Manitowoc's liability for judicial interest was capped as the amount of its settlement. Finally, the district court resolved the insurance coverage disputes as described in detail in section III to follow.

Two primary groups of issues are presented on appeal and cross-appeal. The first group deals with the apportionment of attorney's fees between the plaintiffs and ENIC. The second group deals with Essex's coverage as an additional insured under JALCO's liability policies. A secondary issue involves the apportionment of interest between Manitowoc and Employers Casualty in the Gayden case. We will address each of these issues in turn.

## II.

### A.

ENIC first appeals Gayden's award of attorney's fees against it. The district

---

1. Gayden was interdicted because of his injuries and his daughter, Verlon Gayden Davis, pursued this cause of action on his behalf.

court awarded Gayden attorney's fees from ENIC based on the Louisiana Supreme Court case of *Moody v. Arabie*, 498 So.2d 1081 (La.1986). The *Moody* court held that as co-owners of the recovery from the third-party tortfeasor, the employee and employer should share litigation costs in proportion to their interest in the recovery. ENIC argues that it did not pre-approve Gayden's settlement and therefore *Moody* should not apply. Gayden argues that ENIC gave prior written approval to his settlement in a letter from ENIC's attorney to Gayden's counsel. We need not decide whether ENIC pre-approved Gayden's settlement, however, because we find that Gayden waived any claim he had to *Moody* fees in his settlement agreement.

The settlement agreement, which Gayden's curator, undercurator, and attorney signed on his behalf,[2] provides:

5. Interstate and Stonewall will, on behalf of Gayden, pay the entire lien of Employers National Insurance Company, without reduction. All parties hereto waive any claims and defenses they may have against Employers National Insurance Companmy [*sic*] with respect to the lien.

The district court refused to enforce this waiver because ENIC was not a signatory to the agreement.[3] However, there is no legal requirement that ENIC be a party to the agreement for its terms to be enforceable.

■ Louisiana law provides:

A contracting party may stipulate a benefit for a third person called a third party beneficiary.

Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

La.Civ.Code art. 1978. In fact, there is no requirement that the third-party benefi-

ciary even be specifically named in the contract. *See Andrepont v. Acadia Drilling Co.*, 255 La. 347, 361–64, 231 So.2d 347, 352–53 (1969) (on reh'g) (citing cases). Because ENIC was specifically named in the contract and because the contract conferred specific benefits upon ENIC, *i.e.*, the payment of its compensation lien and the waiver of all claims against it, ENIC's benefit was not "merely incidental" to the settlement. *See Wagner & Truax Co. v. Barnett Enters., Inc.*, 447 So.2d 1255, 1259 (La.Ct.App. 4th Cir.1984); *HMC Management Corp. v. New Orleans Basketball Club*, 375 So.2d 700, 708 (La.Ct.App. 4th Cir.1979), *writs denied*, 378 So.2d 1384, 379 So.2d 11 (La.1980).

■ Gayden also argues that ENIC never officially accepted the benefit conferred by the settlement agreement. However, express acceptance or consent to the *stipulation pour autri* by the beneficiary is not required; assertion by the beneficiary of the claim in a legal proceeding, such as this one, may be sufficient. *Andrepont*, 255 La. at 364–65, 231 So.2d at 353.

■ We find that the language in the Gayden settlement clearly intends a waiver of Gayden's claim for *Moody* fees. The settlement agreement provides that "[a]ll parties hereto [including Gayden] waive any claims ... against [ENIC] with respect to the lien." Gayden points to no other claim he had against ENIC with respect to the lien except his claim for recovery costs. We conclude therefore that Gayden waived his claim for attorney's fees in the settlement agreement. We also conclude that the settlement agreement included a *stipulation pour autri* which ENIC, as third-party beneficiary, tried to accept both in the district court and on this appeal. We therefore reverse that part of the district court's judgment which awarded Gayden

2. After a hearing, the Civil District Court for the Parish of Orleans also approved the settlement.

3. Gayden also argues that the district court found as a matter of fact that the settling parties did not intend to benefit ENIC. However, this finding was a legal one based on the district court's interpretation of the language in the settlement agreement. Of course, as a reviewing court, we may interpret a contract de novo and are not bound by the district court's reading.

$189,602.58 from ENIC.[4]

## B.

ENIC also appeals King's award of attorney's fees against it. Unlike Gayden's case, no evidence suggests that ENIC approved King's settlement. Also unlike Gayden's case, King specifically reserved his rights against ENIC for attorney's fees. In the settlement, King agreed to pay ENIC's lien out of the proceeds of his settlement from the defendants. The settlement further provides that "[t]he payment to intervenors [ENIC] is subject to attorney's fees and costs, according to law, payable to counsel for T.J. King upon motion to the Court." Thus King's case, unlike Gayden's, clearly puts before us the question whether *Moody* applies to settlements reached without the employer's prior written approval.

King first argues that ENIC's refusal to approve the settlement has no effect on *Moody's* application because ENIC unreasonably withheld its approval of his settlement. Louisiana law in effect at the time of King's settlement provides that "the employer or his insurer *may not unreasonably refuse* to approve a final, good faith settlement" between the employee and the tortfeasor. La.Rev.Stat.Ann. § 23:1102(C)(2) (emphasis added) (repealed by Acts 1989, No. 454, § 10 eff. Jan. 1, 1990).[5] The law further provides that an employer's refusal to approve an employee's settlement "will be prima facie unreasonable if the amount of the tendered settlement is greater than the discounted value of future compensation and medical benefits." *Id.* While the law imposes penalties on the employer if it unreasonably withholds consent and the case goes to judgment,[6] it is silent as to the result if the employer unreasonably withholds consent and the case is settled.

█ We conclude that the proper application of this statute to an unapproved settlement is dependent on whether the employ-

er's refusal to approve the settlement was "unreasonable." The district court did not make a factual finding on the reasonableness of ENIC's refusal to approve King's settlement. We will remand the case for it to do so. If on remand the district court determines that ENIC unreasonably withheld consent from King's settlement, it should deem the settlement approved. The *Moody* issue would then be easily resolved because *Moody* fees may be recovered in the event of a settlement as well as judgments. *See, e.g., Herrington v. Mayo,* 550 So.2d 745 (La.Ct.App. 2d Cir.1989); *Samanie & Barnes v. Lawler,* 517 So.2d 340 (La.Ct.App. 1st Cir.1987). Thus if on remand the district court finds that ENIC unreasonably refused to approve King's settlement, its judgment awarding *Moody* fees to King is correct.

█ If, however, the district court finds that ENIC's refusal to approve King's settlement was not unreasonable, we conclude there should be a different result. That result is derived from our interpretation of the interplay between *Moody* and the Louisiana Worker's Compensation Act. In *Moody,* the amount of the employee's judgment against the third-party tortfeasor was insufficient to reimburse the compensation carrier, pay the attorney his contingency fee, and provide a recovery to the injured worker. Applying principles of co-ownership, the Louisiana Supreme Court concluded that the worker and the compensation carrier were co-owners in the worker's recovery. 498 So.2d at 1085. The *Moody* court further held that under the doctrine of *negotiorum gestio* each co-owner is responsible for his proportionate share of reasonable and necessary legal services that accrue to his benefit. *Id.* The *Moody* court therefore established a formula for apportioning the recovery costs between the employee and the compensation carrier on an equitable basis, taking into account the benefit each party had received.

It is difficult to fit *Moody* to our facts if ENIC is deemed not to have approved

---

4. On cross-appeal, Gayden argues that the district court erred in limiting ENIC's *Moody* fees to the amount of its compensation lien. Because of our conclusion that Gayden waived all claims against ENIC respecting its lien, we need not address this argument.

5. Although the final judgment in this case was entered January 18, 1990, this section was still in effect during the relevant episodes in this case: (1) the accident occurred in July 1987; (2) King settled with the tortfeasors in June 1989; and (3) the district court first entered judgment

for King against ENIC for *Moody* fees in September 1989.

6. King argues that he did indeed obtain a judgment against the tortfeasors. Although the document the parties signed settling King's.suit is termed a "Consent Judgment," it was not signed by the district court. Thus it is obviously a settlement and not a "judgment obtained against the third party defendant" as contemplated by then-existing law. *See* La.Rev.Stat.Ann. § 23:1102(C)(2)(a) (repealed by Acts 1989, No. 454, § 10 eff. Jan. 1, 1990).

1444

King's settlement.[7] No cases have been cited to us applying *Moody* to an unapproved settlement. The Louisiana Worker's Compensation Act, however, imposes stiff penalties on the employee and the third-party tortfeasor who do not obtain the employer's approval of the settlement. First, the employee forfeits his right to future compensation. La.Rev.Stat.Ann. § 23:1102(B). More importantly, if the employee fails to pay the employer its compensation lien out of the proceeds of an unapproved settlement, the third-party tortfeasor must pay such lien to the employer. *Id.* § 23:1102(C)(1); *see also id.* § 23:1103 ("No compromise with such third person [tortfeasor] by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him.").

We conclude that the legislative scheme imposing such penalties on the employee and tortfeasor for settling without the employer's consent is incompatible with *Moody*'s goal of requiring the employer to contribute to the employee's attorney's fees when he recovers damages from the tortfeasor.[8] We conclude that the legislative goals must prevail over *Moody*'s goals. Consequently, if the district court on remand determines that ENIC did not unreasonably withhold its consent, it should amend its judgment to deny *Moody* fees to King.

## III.

### A.

At the time of the accident, JALCO had three layers of general liability coverage. JALCO had a primary liability policy with Employers Casualty with limits of $500,000; an excess policy with Interstate providing coverage from $500,000 to $1,000,000; and an umbrella policy with Stonewall providing coverage from $1,000,000 to $5,000,000. Employers Casualty listed Essex as an additional insured and conceded that Essex was covered under its policy. Based on its status as an additional insured in the primary policy, Essex then claimed the benefits of the Interstate and Stonewall policies. However, the district court held that the Interstate policy only covered named insureds and not additional insureds. The district court further found that although the Stonewall policy covered Essex as an additional insured, Stonewall did not "step down" to cover the layer of insurance provided by Interstate. This ruling left Essex with a gap in its coverage for the Gayden settlement of $500,000 (the amount between Employers Casualty's maximum policy limits and Stonewall's minimum policy limits).

Essex first contests the district court's holding that it was not insured under the Interstate policy. The district court found that Essex was not insured under the Interstate policy because Essex was not a "named insured" under that policy. Essex concedes that it was not a "named insured" under the Interstate policy. Essex contends instead that it was an "other insured" under that policy by virtue of its being an additional insured on the underlying Employers Casualty policy. The Interstate policy does not define the term "insured," but does include the following language: "The provisions of the immediate underlying policy [Employers Casualty] are incorporated as a part of this policy except for ... provisions therein which are inconsistent with this policy." Interstate Policy, pt. I, ¶ 1. Thus because the Employers Casualty policy provides coverage for Essex, the Interstate policy also covers Essex as long as that coverage is not "inconsistent" with the Interstate policy.

7. We are not alone in finding this area of Louisiana workers' compensation law difficult. *See* 14 W. Malone & A. Johnson, *Workers' Compensation Law and Practice* § 373, at 99 (2d ed. Supp.1990) (Louisiana Civil Law Treatise) ("[W]ith the overlay of the attorney's fee issues raised by the decision in *Moody v. Arabie,* the [relevant statutory] provisions have been difficult to apply.") (footnote omitted).

8. ·The view that employers should pay proportionate recovery costs incurred by employees against third-party tortfeasors is far from universal. In interpreting the Longshoremen's and Harbor Workers' Compensation Act, the United States Supreme Court held that an employee is not entitled to proportionate attorney's fees from its employer. *Bloomer v. Liberty Mut. Ins.*

*Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). The Supreme Court rejected the employee's theory that because he had created a common fund which benefitted both himself and the employer, the employer should pay part of the attorney's fees. *Id.* at 78, 100 S.Ct. at 927. The Supreme Court noted several state courts that have reached similar results. *Id.* at 88 n. 15, 100 S.Ct. at 933 n. 15 (citing cases); *see also* 2A A. Larson, *The Law of Workmen's Compensation* § 74.32(a)(2) (1990 & Cum.Supp.1990). *But see id.* § 74.32(a), at 14–486 ("In a substantial majority of states, when a third party suit is brought or recovery effected by the employee, the employer or carrier is now obliged to pay a portion of the attorney's fees out of his share.").

The district court held that the addition of Essex as an additional insured on the underlying policy was a provision "inconsistent" with the Interstate policy because Essex was not a "named insured" in the Interstate policy. We disagree. We do not find the addition of Essex as an insured as "inconsistent" with Interstate's policy. Instead we view the addition as supplemental. Because Interstate's policy provides that it will incorporate the provisions of the immediate underlying policy, it incorporates Employers Casualty's definition of insured which includes Essex. As an additional insured in the underlying policy, Essex is entitled to insurance coverage from Interstate according to the provisions of the Interstate policy.

■ Interstate also argues against coverage on grounds that it was not promptly notified of Essex's addition as an insured. However, Interstate's policy does not require that notice of additional insureds be given. Instead it requires that prompt notice be given for "any change in *coverage* of the underlying insurance." Interstate Policy, pt. IV, ¶ 1 (emphasis added). The policy also states that it shall only apply to certain "coverages" which are set out in the declarations page of the policy. *Id.* pt. I, ¶ 1. In the declarations page, "coverage" includes general risks such as bodily injury and property damage for which Interstate provides indemnity. *Id.* Declarations § 4. Thus the word "coverage" as used in this policy refers to the nature of the risks insured against and not to the parties insured.[9] Because the Interstate policy does not require notice of additional insureds, Essex's standing as an insured under the Interstate policy is not affected by lack of notice. We therefore reverse

the district court judgment denying the third-party demand of Essex against Interstate.[10]

**B.**

■ Stonewall appeals the district court's finding that it covered Essex. Unlike the Interstate policy, the Stonewall policy defined "Insured" as including "any other person or organization who is an additional Insured under any underlying policy of insurance." Stonewall Policy, Insuring Agreements § II(A)(2). Because Essex was an "additional Insured" on the "underlying policy" issued by Employers Casualty, the district court held that Essex was insured by Stonewall. However, Stonewall argues that the following provision in its policy negates coverage for an additional insured such as Essex:

> *Additions.* In the event additional Insureds or additional coverages are added to the underlying insurance while this policy is in force, prompt notice shall be given to the Company and the Company shall be entitled to charge appropriate additional premium.

Stonewall Policy, Conditions ¶ 2. Stonewall argues that because it did not receive "prompt notice" that Essex was an additional insured on the underlying policy, it did not provide coverage to Essex.

As we read the above "prompt notice" provision, it is designed to give Stonewall two options: It allows Stonewall to evaluate whether to charge an additional premium or to cancel the policy on giving thirty days' notice of its intent to do so.[11] These limitations in the notice provision persuade us that the provision is not a condition of coverage. Thus, failure to give Stonewall prompt notice of Essex's addition as an

---

9. In contrast to the notice provision in the Interstate policy, the Stonewall policy requires notice both "[i]n the event *additional Insureds or additional coverages* are added to the underlying insurance." Stonewall Policy, Conditions ¶ 2 (emphasis added). The Interstate policy simply requires notice for "change in coverage."

10. Interstate also argues that JALCO's contract with Employers Casualty should be reformed. We conclude that Interstate's claim on this issue is without merit for the same reason we deny Stonewall's similar claim outlined in more detail below.

11. The Stonewall policy provides that it may be cancelled by Stonewall by "written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective." Stonewall Policy, Conditions ¶ 16. If Stonewall

were to cancel the policy, the "earned premium shall be computed pro rata." *Id.*

Stonewall does not contend that it would have cancelled the policy had it known of Essex's addition as an insured. Stonewall's president admitted that Stonewall would have accepted Essex as an additional insured:

Q. In this particular case, assuming that Jalco rented a crane from Essex and that Jalco named Essex as an additional insured to the Employers policy and that Jalco was furnishing the operator for the crane and that Jalco was furnishing personnel to erect a crane and take it down and to do anything else that was associated with the crane, is that a risk that Stonewall would have accepted?

\* \* \* \* \* \*

A. Yes.

Falgoust Deposition at 36.

insured in the underlying policy did not void coverage to Essex under Stonewall's policy.

■ Stonewall further argues that neither it nor JALCO intended Essex be added to the underlying primary policy issued by Employers Casualty and that the policies should be reformed to reflect that intent. Reformation is an equitable remedy available to parties to an agreement to correct mutual mistakes that result in a written agreement failing to state the parties' original intentions. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). It is unclear whether Stonewall has standing to seek reformation of the Employers Casualty policy because it is not a party to that policy. *See Blevins v. Manufacturers Record Publishing Co.*, 235 La. 708, 105 So.2d 392 (1958) (reformation is normally unavailable to those who assert rights arising from an agreement to which they were not parties). Assuming without deciding that Stonewall is a proper party to assert reformation, it was required to prove its claim with clear and convincing evidence. *Phillips*, 812 F.2d at 274.

■ To support its contention that JALCO never intended Essex to be an "additional insured" under its Employers Casualty policy, Stonewall produced a flurry of letters between JALCO and Employers Casualty. Stonewall suggests that these letters demonstrate conclusively that JALCO only wanted to add Essex's cranes to its equipment insurance policy and not to add Essex to its general liability policy. However, in March 1987 Employers Casualty sent Essex a certificate of insurance stating that Essex had been added to JALCO's general liability policy. Employers Casualty later conceded that Essex was an

insured under its policy at the time of the accident.

The district court found that there was "credible testimony indicating that JALCO intended to add Essex to its primary policy and that it instructed Employers to do so."[12] This factual finding by the district court is not clearly erroneous. We therefore affirm that part of the district court's judgment granting Essex's claim for coverage against Stonewall in excess of one million dollars for the Gayden accident.[13]

## IV.

■ Finally, Manitowoc and Employers Casualty, as Essex's insurer, appeal the district court's apportionment of judicial interest between them in the Gayden case. Manitowoc argues that the amount of judicial interest it was ordered to pay was too much, and Employers Casualty argues that it was too little.

In May 1989, Gayden settled with crane manufacturer Manitowoc for $35,000. Then in June 1989, Gayden settled with Essex and its insurers for a stipulated present value of $1,120,000. In July 1989, ENIC moved for summary judgment against Manitowoc, Essex, and Essex's insurers for payment of its Gayden lien. The district court granted summary judgment in favor of ENIC directing Stonewall and Interstate to pay ENIC's $189,602.58 compensation lien in accordance with their settlement with Gayden. The district court further directed Manitowoc, Essex, and Employer's Casualty (as Essex's insurer) to pay ENIC the judicial interest on that lien. That judgment "pretermit[ted] any determination of solidary obligation among Manitowoc Inc. and Essex Crane Rental Corporation." In January 1990, the district court entered judgment limiting Manitowoc's liability for judicial interest to interest on

---

**12.** The following evidence supports the district court's finding:

(1) Essex's standard form lease sent to JALCO included a provision that Essex be added as a named insured on JALCO's general liability policies; (2) although several provisions of the Essex lease were scratched out by JALCO, the provision concerning insurance coverage was not; (3) JALCO's chief executive officer wrote a note with respect to the Essex lease which says, "Of course, we should send them proof of insurance coverage!"; (4) the Essex comptroller signed the JALCO purchase order "subject to" the unexecuted Essex lease and testified that he understood JALCO agreed to all lease provisions which had not been scratched out; and most importantly, (5) JALCO's insurer, Employers Casualty, issued a certificate of insurance naming Essex as an additional insured for general

liability coverage on the same day that Essex wrote JALCO demanding such a certificate. Although Essex and JALCO and Employers Casualty disagreed about the meaning of some of these occurrences, the district court did not clearly err in its credibility choice.

**13.** On appeal, Essex also claims penalties and attorney's fees from Interstate and Stonewall. Under Louisiana law insurers are liable for penalties and attorney's fees if they fail to pay a claim when such failure is "arbitrary, capricious, or without probable cause." La.Rev.Stat. Ann. § 22:658. The district court found that "[c]onsidering the complexities (both factual and legal) of these cases," no party's action concerning coverage was arbitrary and capricious. This finding by the district court is not clearly erroneous.

$35,000, commencing from when suit was filed against it. Manitowoc argues the assessment of judicial interest against it was too high, and Employers Casualty argues it was too low.

The issue at hand is how to apportion judicial interest on the employer's compensation lien between codefendants who separately settle with the plaintiff. Employers Casualty argues that the interest should be split fifty fifty. It argues that the judgment against Manitowoc and Essex was a solidary obligation in which each debtor should share equally in the judgment. Employers Casualty relies on Louisiana Civil Code article 1804 which says that "[a]mong solidary obligors, each is liable for his virile portion." However, the rest of that article states that "[i]f the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor." La.Civ.Code art. 1804. Although the Gayden action did not go to trial for a judicial apportionment of fault, we conclude that we should accept the parties' assessment of their own degree of fault as reflected by their respective contributions to Gayden's overall recovery.

Gayden's total recovery was $1,155,000. Essex and its insurers contributed $1,120,000, and Manitowoc contributed $35,000. Manitowoc's $35,000 settlement represents three percent of Gayden's total recovery. Manitowoc is therefore responsible for interest on only three percent of ENIC's total compensation lien of $189,602.58. Thus Manitowoc will pay ENIC judicial interest only on $5,688 rather than on $35,000. On remand, the district court shall modify its judgment accordingly.

## V.

In summary, on the *Moody* issues, we conclude that Gayden waived his claims for *Moody* fees in his settlement agreement and that this waiver was intended to benefit ENIC. We therefore reverse the district court's award of *Moody* fees to Gayden from ENIC. We remand the *Moody* issue in King's case to the district court. If the district court finds that ENIC unreasonably withheld consent of King's settlement, it will deem the settlement approved. In that event, the district court's judgment on the *Moody* issue is affirmed. If, however, the district court finds that ENIC did not unreasonably refuse to approve King's settlement, we conclude it should amend its judgment to deny *Moody* fees to King.

On the insurance issues, we conclude that Interstate's excess policy which did not list Essex as a "named insured" was not "inconsistent" with the underlying policy which listed Essex as an "additional insured." We further conclude that Interstate's policy did not require notice of Essex's addition as an insured as a prerequisite to coverage. We therefore reverse the district court's judgment exonerating Interstate. We conclude that JALCO's failure to comply with Stonewall's requirement of prompt notice of additional insureds did not void its coverage of Essex. We further conclude that the district court did not commit clear error in finding that JALCO intended to add Essex to its primary policy. We therefore affirm the district court's judgment against Stonewall.

Finally, on the judicial interest issue, we conclude that Manitowoc is responsible for interest based solely on the ratio its settlement bears to Gayden's total recovery. We therefore modify the district court's judgment apportioning interest between Manitowoc and Essex. Accordingly, we remand the case to the district court for further proceedings and with instructions to modify its judgment consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

### ON PETITION FOR REHEARING
#### June 18, 1991.

PER CURIAM:

This case is again before us on Gayden's petition for rehearing. We grant the petition in part and modify our original opinion, 928 F.2d 1438, as outlined below.

We initially concluded that in his settlement agreement with the third-party tortfeasors, Gayden waived his claims for all attorney's fees against ENIC. On petition for rehearing, Gayden argues that he did not waive his claim for attorney's fees on his entire recovery, but only on those fees based on ENIC's lien of $189,602.58. In its memorandum decision of October 24, 1989, the district court specifically divided Gayden's award for *Moody* fees into three distinct parts: (1) the past compensation lien; (2) the discounted value of future compensation; and (3) the discounted value of future medical expenses. *Moody* specifically gives Gayden a right to recover attorney's fees based on the value of future compensation benefits. *Moody v. Arabie,* 498 So.2d 1081, 1087 (La.1986).

The settlement agreement reads as follows: "All parties hereto [including Gayden] waive any claims ... they may have

against Employers National Insurance Company *with respect to the lien.*" (emphasis added) The word "lien" as used in this agreement plainly means the compensation for past benefits ENIC paid on behalf of Gayden. It does not include any credit ENIC may receive toward payment of Gayden's future compensation benefits. On reflection we are persuaded that Gayden did not waive any claim for attorney's fees he may have against ENIC with respect to his future compensation benefits.

The district court will have the same task on remand in connection with the Gayden settlement as it has on the King settlement: It must determine whether ENIC unreasonably withheld approval of the Gayden settlement. If the district court answers this question in the affirmative, Gayden may recover attorney's fees from ENIC for that portion of his award which exceeds ENIC's lien.

Gayden argued to us in brief and oral argument that the district court erred in limiting his *Moody* fees to $189,602.58, the amount of ENIC's compensation lien. Because we originally determined that Gayden waived all attorney's fees, we did not address this argument in our original opinion. If the district court awards Gayden attorney's fees on remand, we conclude that those fees are limited to $189,602.58. We base this conclusion on the language in *Moody* which provides that the employee's recovery costs may be paid by the employer "out of his share" of the total recovery. 498 So.2d at 1085 n. 1; see also *id.* at 1087 (*Moody* fees calculated "[b]y deducting the employer's proportionate share of recovery costs from the compensation actually paid.") Thus *Moody* caps the amount an employer must contribute to an employee's recovery costs to that amount it would presently receive from an employee recovery.

In summary, the district court on remand should determine whether ENIC unreasonably refused to approve Gayden's settlement. If its refusal was unreasonable, the district court should award Gayden attorney's fees from ENIC on the portion of his award that exceeds the $189,602.58 lien. However, in no event should the district court award Gayden attorney's fees in excess of $189,602.58.

The petition for rehearing is otherwise DENIED.