Opinion issued April 15, 2010



 

 

 

 

 

 

In the

Court of Appeals

for the

First District of Texas

____________

 

NO. 01-08-00295-CV

____________

 

TELLEPSEN BUILDERS, L.P., Appellant

 

V.

 

KENDALL/HEATON ASSOCIATES, INC. AND CBM ENGINEERS, INC., Appellees



 



 

On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 2006-44489-A



 



 

 

O P I N I O N

          Tellepsen Builders, L.P. appeals from
summary judgments in favor of Kendall/Heaton Associates, Inc. and CBM
Engineers, Inc.  In its sole issue,
Tellepsen asserts that the trial court erred by interpreting the term “property
and equipment insurance” in a waiver-of-subrogation clause to include
commercial general liability insurance. 
We reverse the summary judgments and remand for further proceedings.

Background 

          The contracts in dispute relate to a
construction project known as the Phase One Expansion of the Camp Allen Retreat
and Conference Center (the Retreat).  The
owner of the Retreat, the Protestant Episcopal Church Council for the Diocese
of Texas (the Council), entered into a contract with Tellepsen, whereby
Tellepsen agreed to act as the general contractor for additions and renovations
to the Retreat.  This contract was based
upon a standard form agreement promulgated by the Associated General
Contractors of America (AGC).[1]  The contract between Tellepsen and the
Council reflected numerous substantive revisions to the standard form of
agreement as promulgated by the AGC, including revisions to provisions relating
to indemnity[2]
and insurance.[3]  

          Tellepsen engaged several subcontractors
to perform specific tasks for the Retreat project.  Tellepsen entered into a subcontract with
Kendall to perform architectural design work, and it entered into a separate
subcontract with CBM to perform structural engineering and design work.  Both the Kendall and CBM subcontracts were
based upon standardized form agreements promulgated by the AGC.[4]  In both subcontracts, references to
“Contractor” refer to Tellepsen.  In
their respective subcontracts, Kendall and CBM are each individually referred
to as “Architect/Engineer.” 

          Both subcontracts state that the
“Contract Documents govern the relationship between the Contractor and the
Architect/Engineer.”  Each subcontract
defines the “Contract Documents” to consist of the subcontract itself,
including exhibits identified in the subcontract, plus written amendments to the
subcontract as agreed to by the parties. 
The contract between Tellepsen and the Council is not listed as an
exhibit to either of the subcontracts at issue, although both subcontracts expressly
reference Tellepsen’s agreement with the Council.  The subcontracts both include a merger
clause, stating that “[t]his Agreement represents the entire agreement between
the Contractor and the Architect/Engineer and supersedes all prior
negotiations, representations and agreements, either written or oral.” 

          Both subcontracts required the
Architect/Engineer to carry a commercial general liability insurance (CGL) policy
listing Tellepsen as an additional insured. 
Both subcontracts also contain the following waiver-of-subrogation clause,
which is at the heart of the controversy before the Court:

WAIVER OF SUBROGATION  The Contractor [Tellepsen] and
Architect/Engineer [Kendall or CBM] waive all rights against each other and the
Owner [the Council], Subcontractors and Subsubcontractors for loss or damage to
the extent covered by property or equipment insurance, except such rights as
they may have to the proceeds of such insurance.

 

The
subcontracts do not expressly define the term “property or equipment
insurance.”

          Several years after the Retreat was
completed, the Retreat began showing signs of structural and water damage.  The Council demanded that Tellepsen repair
the defects.  Tellepsen performed the
repairs and sought reimbursement from its CGL insurance carrier, Zurich
American Insurance Company.  Zurich
honored the claim under the CGL policy and reimbursed Tellepsen $841,042 for
the repairs.[5]
 

          Tellepsen, as subrogor of Zurich,
claimed that Kendall and CBM, among others, were responsible for design and
construction defects that caused the damages suffered by the Council.  Tellepsen filed suit against its subcontractors,
alleging negligence, breach of contract, and breach of warranty.  Tellepsen additionally named as defendants First American
Group Construction f/k/a National Framing Contractors and Advanced Concrete
Surfaces, Ltd. f/k/a Gypsum Floors of Texas, Inc.  After the trial court granted summary
judgment in favor of Kendall and CBM, the trial court severed the claims
against Kendall and CBM into this separate action so that Tellepsen could
appeal the summary judgment rulings. 
Accordingly, these other defendants are not parties to this appeal.

          Both Kendall and CBM filed Rule
166a(c) motions for summary judgment, asserting that the waiver-of-subrogation
clauses in their subcontracts, which apply to “loss or damage to the extent
covered by property or equipment insurance,” precluded Tellepsen from seeking
recovery from them for property damage covered by Tellepsen’s CGL insurance
policy.  Tellepsen responded that the
waiver-of-subrogation clauses did not apply because Tellepsen’s CGL policy was
not “property or equipment insurance” as required for the application of those
clauses, but Tellepsen did not file its own motion for summary judgment
confirming its proposed interpretation.  

          The trial court granted summary
judgments in favor of both Kendall and CBM, in each case ordering that
Tellepsen take nothing.  This appeal
ensued.

Analysis

          On appeal, Tellepsen argues that the
trial court erred in granting the summary judgments in favor of Kendall and
CBM.  Tellepsen contends that the
waiver-of-subrogation clauses applied only to claims covered by property or
equipment insurance, and not to claims covered by CGL insurance.  In support of this contention, Tellepsen
argues that both industry custom and the law recognize that “property
insurance” is distinct from “liability insurance.”  Tellepsen contends that its interpretation is
also supported by language in its separate contract with the Council, and by
separate provisions in the subcontracts with Kendall and CBM which provided for
mutual indemnity as between Tellepsen and its subcontractors, and which
required those subcontractors to maintain professional liability insurance.

I.       Standard
of Review

          We review a trial court’s summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  Under
the traditional standard for summary judgment, the movant has the burden to
show that no genuine issue of material fact exists and that the trial court
should grant a judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  When reviewing a summary judgment motion, we
take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  Dorsett,
164 S.W.3d at 661; Knott, 128 S.W.3d
at 215; Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).

II.      Rules
of Contract Construction

          When construing a written contract,
our primary concern is to ascertain the true intent of the parties as expressed
in the instrument.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  We must examine and
consider the entire contract in an effort to harmonize and give effect to all
provisions so that none are rendered meaningless.  J.M.
Davidson, 128 S.W.3d at 229; Coker,
650 S.W.2d at 393.  All contractual
provisions should be considered with reference to the entire instrument, and no
single provision taken alone should be controlling.  J.M.
Davidson, 128 S.W.3d at 229.  Terms are
given their plain, ordinary, and generally accepted meaning unless the
instrument shows that the parties used them in a technical or different
sense.  Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.
1996).

          If the written instrument is so worded
that it can be given a definite or certain legal meaning, then the contract may
be construed as a matter of law.  Coker, 650 S.W.2d at 393.  An unambiguous contract will be enforced as
written, and parol evidence will not be received for the purpose of creating an
ambiguity or to give the contract a meaning different from that which its
language imports.  David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450 (Tex. 2008); see also Nat’l Union Fire Ins. Co. v. CBI
Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

          When a contract contains an ambiguity,
summary judgment is precluded because interpretation of the contract becomes a
fact issue.  Coker, 650 S.W.2d at 394 (citing Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980)); Simpson v. GEICO Gen. Ins. Co., 907
S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1995, no pet.).  A simple lack of clarity or disagreement
between parties does not render a term ambiguous.  See
DeWitt County Elec. Coop., Inc. v. Parks,
1 S.W.3d 96, 100 (Tex. 1999).  Rather, an
ambiguity arises only after the application of established rules of construction
leaves an agreement susceptible to more than one meaning.  Id.  For an ambiguity to exist, both potential
meanings must be reasonable.  Id. 
Whether a contract is ambiguous is a question of law for the court to
decide by looking at the contract as a whole in light of the circumstances
present when the contract was entered.  Coker, 650 S.W.2d at 394.

III.    Summary
Judgment on Interpretation of Subcontracts

          We now turn to the interpretation of
the waiver-of-subrogation clauses, which provided: “The Contractor and
Architect/Engineer waive all rights against each other and the Owner,
Subcontractors and Subsubcontractors for loss or damage to the extent covered
by property or equipment insurance, except such rights as they may have to the
proceeds of such insurance.”

A.      Subcontractors’
Arguments 

          The argument advanced by appellants
Kendall and CBM, both in the trial court and on appeal, is essentially a
plain-English approach to determining an unambiguous meaning of “property and
equipment insurance.”  Kendall asserts
that the term “property or equipment insurance” means “an insurance policy that
provides coverage for property damage.” 
Similarly, CBM asserts that the term “includes any type of insurance that
covered the property damage to the project.” 
Their summary-judgment
arguments thus rest on the following syllogism: the Council suffered damage to
property; Tellepsen’s CGL insurance policy covered the damage to the Council’s
property; therefore the damage was covered by “property” insurance and
Tellepsen’s subrogation claim is waived. 
In addition, CBM contends that its approach to interpreting
“property insurance” is consistent with the Texas Supreme Court’s interpretation
of the term “property damage” in Lamar
Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1 (Tex. 2007).  Based on a detailed analysis of the CGL
policy at issue in that case, the Texas Supreme Court concluded that damage to
a home built by a general contractor, and arising from that contractor’s own
defective construction, was “property damage” covered by the CGL policy and
giving rise to a duty to defend.  Lamar Homes, 242 S.W.3d at 5–16.

B.      Tellepsen’s
Arguments 

          In
response to the summary judgment motions, Tellepsen argued that the
subcontracts’ references to “property . . . insurance” connote a particular
kind of insurance policy which is distinguishable from liability insurance,
such as the CGL policy provided to Tellepsen by Zurich in this case.  Tellepsen contends that a property insurance
policy is first-party insurance that protects the insured’s own assets against
specific perils, such as fire or flooding. 
See, e.g., 4 Philip L. Bruner & Patrick J. O’Connor,
Jr., Bruner and O’Connor on
Construction Law § 11:106, at
336–37 (2002) (“Property coverage protects an insured from loss to
property in which it has an insurable interest when the loss is caused by
certain covered ‘causes of loss’ or ‘perils.’”); see also Warrilow v. Norrell, 791 S.W.2d 515, 527-28 (Tex.
App.—Corpus Christi 1989, writ denied) (distinguishing property loss coverage
under first-party insurance policy from liability coverage under third-party
insurance policy); Highlands Ins. Co. v.
City of Galveston ex rel. Bd. of Trustees of Galveston Wharves, 721 S.W.2d
469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.) (“A policy of
property insurance is a personal contract for indemnity for the insurable
interest possessed by the insured at the time of the issuance of the policy,
and also at the time of the loss.”) (citing Maryland
Cas. Co. v. Palestine Fashions, Inc., 402 S.W.2d 883, 888 (Tex. 1966)); McBroome-Bennett Plumbing, Inc. v. Villa
France, Inc., 515 S.W.2d 32 (Tex. Civ. App.—Dallas 1974, writ ref’d
n.r.e.); Cumis Ins. Society, Inc. v. Republic Nat’l Bank, 480 S.W.2d 762
(Tex. Civ. App.—Dallas 1972, writ ref’d n.r.e.).[6] 

          According to Tellepsen, property
insurance is distinguished from liability insurance, which is “[a]n agreement
to cover a loss resulting from the insured’s liability to a third party . . .
.  The insured’s claim under the policy
arises once the insured’s liability to a third party has been asserted.”  Black’s
Law Dictionary 806 (7th ed. 1999). 
The Fourteenth Court of Appeals has acknowledged the conceptual
distinction between liability insurance and property insurance:

We understand the
distinction between property insurance and liability insurance.  Many policies involve both.  A policy of property insurance is a personal
contract for indemnity for the insurable interest possessed by the insured at
the time of the issuance of the policy, and also at the time of the loss.  Property insurance policies are “intended
solely to indemnify the insured for his actual monetary loss by the occurrence
of the disaster; unless the insured has sustained an actual loss, the insurer
has no liability.”  Liability policies,
on the other hand, insure against loss arising out of legal liability, usually
based upon the assured’s negligence.      



Highlands Ins. Co., 721 S.W.2d
at 471 (internal citations omitted).  The
distinction has been
observed by other courts and authorities as well.  See,
e.g., Warrilow, 791 S.W.2d at
527–28 (distinguishing property loss coverage under first-party insurance
policy from liability coverage under third-party insurance policy); Gap, Inc. v. Fireman’s Fund Ins. Co.,
782 N.Y.S.2d 242, 244 (N.Y. App. Div. 2004); 4 Bruner & O’Connor, supra, § 11:106, at 337 (“Unlike CGL
coverage—which protects the insured against claims of third parties arising out
of its acts or omissions, resulting in bodily injury or property
damage—property damage is first-party coverage.”).[7]

          Tellepsen also argues that the
interpretation proposed by Kendall and CBM would render other provisions in the
subcontracts meaningless.  See Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006) (stating that a contract
should be read so that no provision is rendered meaningless).  Specifically, Tellepsen contends that Kendall
and CBM’s proposed interpretation would render meaningless two indemnity
clauses included in both subcontracts:

7.1.1  In addition to any liability or obligation of
the Architect/Engineer to the Contractor that may exist under any other
provision of this Agreement or by law or otherwise, to the fullest extent
permitted by law the Architect/Engineer shall defend, indemnify and hold
harmless the Contractor and Owner and their respective officers, agent,
employees and Subcontractors from and against claims, actions, proceedings, liabilities,
losses, damages, costs and expenses, including legal fees, which the Contractor
and Owner and their respective officers, agents and employees may sustain by
reason of any [negligent[8]] act or omission by the
Architect/Engineer, its officers, agents, employees or subcontractors, arising
out of the Architect/Engineer’s work.

 

7.1.2  To the fullest extent permitted by law, the
Contractor agrees to defend, indemnify and hold harmless the
Architect/Engineer, its officers, agents, employees from and against claims,
actions, proceedings, liabilities, losses, damages, costs and expenses,
including legal fees, which the Architect/Engineer, its officers, agents and
employees may sustain by reason of any act or omission by the Contractor, its
officers, agents, employees or subcontractors, arising out of the Contractor’s
work.

 

These
provisions are evidence of the parties’ intent that a right of indemnity exist
in favor of the Contractor or the Architect/Engineer, and against the opposite
party, as circumstances may require, in the event of a claim against one
arising from the negligence of the other. 
Under the construction of the waiver-of-subrogation clause proposed by
Kendall and CBM, these provisions arguably could be rendered meaningless when
the indemnitee also has third-party insurance coverage, such as a CGL policy. 

C.      Application
of Summary Judgment Standard  

          As the movants seeking summary
judgment, it was the burden of Kendall and CBM to establish that there was no
genuine issue of material fact and that they were entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c). 
In the course of our de novo review, we must indulge every reasonable
inference in favor of nonmovant Tellepsen, and resolve any doubts in favor of
Tellepsen.  Dorsett, 164 S.W.3d at 661. 

          Although Kendall and CBM are correct
that the plain language of the waiver-of-subrogation clauses can be read to
mean that the parties waived any (or “all”) subrogation rights with respect to
property damage claims,[9] Tellepsen
correctly observes that the contracts’ indemnity provisions suggest a possible different
reading, one that depends not on the type of covered damage but instead on the
type of insurance coverage—first-party or third-party.  Our effort to harmonize these indemnity
provisions with the waiver-of-subrogation clause, see J.M. Davidson, 128 S.W.3d at 229, does not compel us to agree
with Tellepsen’s proposed interpretation is the only reasonable one as a matter
of law in this case.  Unlike other cases
in which courts have reached that conclusion,[10] the
subcontracts at issue here do not expressly require Tellepsen to obtain
first-party property insurance, so as to demonstrate that the parties intended
the waiver-of-subrogation clause to apply only to “property insurance” in the
sense suggested by Tellepsen.

          We thus hold that the contract as a
whole raises an ambiguity as to the parties’ intent when they agreed to “waive
all rights against each other . . . for loss or damage to the
extent covered by property or equipment insurance.”  Here, the ambiguity is evident from the
contracts themselves, without any reliance on parol evidence of intent, because
the waiver-of-subrogation clause cannot be given a certain or definite
interpretation in light of all of the provisions of the contract.  See
Fiess v. State Farm Lloyds, 202 S.W.3d 744, 747 (Tex. 2006); J.M. Davidson, 128 S.W.3d at 229.

D.      Parol
Evidence

          On appeal, both parties have attempted
to rely on extra-contractual evidence in support of their interpretation of the
agreement.  The subcontracts at issue
included merger clauses, stating that each subcontract represented the entire
agreement and superseded all prior negotiations, representations and
agreements, either written or oral.  The
contracts at issue are thus integrated agreements, subject to the application
of the parol evidence rule.  See, e.g., Baroid Equip., Inc. v. Odeco Drilling, Inc., 184 S.W.3d 1, 13 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied) (parol evidence rule is
particularly applicable when a written contract contains a merger clause).  As we have held that the contracts are
ambiguous as to the meaning of the waiver of subrogation clause, on remand the
trial court may consider appropriate extrinsic evidence.  See
Nat’l Union Fire Ins. Co. v. CBI Indus.,
907 S.W.2d 517, 521 (Tex. 1995).

Conclusion

          We reverse the judgment of the trial
court.  We remand the case to the trial
court for further proceedings consistent with this opinion.

 

 

                                                                   Michael
Massengale

                   Justice

 

Panel
consists of Chief Justice Radack and Justices Bland and Massengale.











[1]        The contract was a revised version of the “Standard Form of
Design-Build Agreement and General Conditions Between Owner and Contractor
(Where the Basis of Payment is the Cost of the Work Plus a Fee, with a Guaranteed
Maximum Price Option),” which was Document No. 410 promulgated by the AGC.

 





[2]        For example, Tellepsen and the Council deleted from their contract
section 3.4.6 of the form, which otherwise would have required the Council
to indemnify Tellepsen and its subcontractors, including Kendall and CBM, from
claims arising from performance of work in any area affected by hazardous
materials.  

 





[3]        For example, Tellepsen and the Council inserted an additional provision
into section 8.2.10 of their contract, specifying that “CGL and Umbrella/Excess
Liability insurance will be provided by [Tellepsen] at a cost of $.0065 of the
[guaranteed maximum price (GMP)] amount.” 


 





[4]        The Kendall and CBM subcontracts were based on the Standard Form of
Agreement Between Contractor and Architect/Engineer for Design-Build Projects,
which was Document No. 420 promulgated by AGC.





[5]        The record before us does not reflect whether Tellepsen presented a
claim for reimbursement under any other insurance policy, nor does it reflect whether
Zurich ever disputed coverage under the CGL policy.

 





[6]        While not as
clearly defined, the term “equipment insurance” as it appears in case law is
typically used to mean property insurance that limits coverage to
equipment.  See, e.g., Rogers & Sons,
Inc. v. Santee Risk Managers, LLC, 631
S.E.2d 821, 822 (Ga. App. 2006); Waddell
v. C.I.R., 86 T.C. 848, 868 (1986); Stroud
v. N.W. Nat’l Ins. Co., 360 So. 2d 528, 528 (La. App. 1978); Millwrights, Inc. v. Bituminous Fire &
Marine Ins. Co., 565 F.2d 382, 382 (6th Cir. 1977); Gardner-Denver Co. v. Dic-Underhill Constr. Co., 416 F. Supp. 934,
935 (D.C.N.Y. 1976).

 





[7]        Likewise, courts have also recognized that equipment insurance is
separate and distinct from liability insurance. 
See
Shaffer v. Stewart Constr. Co., Inc., 865 So. 2d 213,
218 (La. App. 2004); Great Plains Equip.,
Inc. v. N.W. Pipeline Corp., 979 P.2d 627, 636 (Idaho 1999); King v. Employers Nat’l Ins. Co., 928
F.2d 1438, 1446 (5th Cir. 1991); Smith v.
St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130, 133 (Minn. 1984)
(Wahl, J., dissenting); Serv. Employees’
Int’l Union, Local No. 22 v. Roseville Community Hosp., 101 Cal. Rptr. 69,
71 (Cal. Ct. App. 1972).

 





[8]
       In Kendall’s subcontract with
Tellepsen, the contracting parties agreed to the handwritten insertion of the
word “negligent” as indicated in brackets above.  This modification to the form contract was
not made in the subcontract between CBM and Tellepsen.

 





[9]
       See,
e.g., Black’s
Law Dictionary 875 (9th ed. 2009) (defining “property insurance” as “An agreement to indemnify against property damage of destruction.—Also
termed property-damage insurance.”).

 





[10]       See, e.g., Nodaway Valley Bank v. E.L. Crawford
Constr., Inc., 126 S.W.3d 820, 829–30 (Mo. Ct. App. 2004) (relying on
contractual property-insurance procurement requirement, along with
waiver-of-subrogation clause, as evidence of parties’ intent “to shift the risk
of each other’s loss to the insurer to the extent the loss is covered by
property insurance”).